**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

LOUIS J. SCORPINITI,

        Plaintiff,

vs.

FOX TELEVISION STUDIOS, INC.,

        Defendant.

No. 11-CV-64-LRR

**ORDER**

---

## *TABLE OF CONTENTS*

I.      **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.     **PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    **SUBJECT MATTER JURISDICTION.** . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.    **STANDARD OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

V.     **RELEVANT FACTUAL BACKGROUND.** . . . . . . . . . . . . . . . . . . . . . **4**

      A.     **Parties.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
      B.     **Alleged Trademark Infringement.** . . . . . . . . . . . . . . . . . . . . . **4**

VI.    **MOTION TO STRIKE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

VII.   **MOTION TO DISMISS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

      A.     **Personal Jurisdiction.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
            1.     **Parties' arguments.** . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
            2.     **Applicable law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
            3.     **Analysis.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
                 a.     **Factors 1 and 2.** . . . . . . . . . . . . . . . . . . . . . . . . **10**
                 b.     **Factor 3.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
                 c.     **Factor 4.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
                 d.     **Factor 5.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
            4.     **Summary.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
      B.     **Venue.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
            1.     **Parties' arguments.** . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
            2.     **Applicable law.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**
            3.     **Analysis.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**
                 a.     **Convenience of the parties.** . . . . . . . . . . . . . . . . **17**

    *b.*  *Convenience of the witnesses.* . . . . . . . . . . . . . . . . **18**

    *c.*  *Interests of justice.* . . . . . . . . . . . . . . . . . . . . . . **20**

   *4.*  *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

**VIII. CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **21**

## I.  INTRODUCTION

The matters before the court are Defendant Fox Television Studios, Inc.'s ("FTVS") "Second Motion to Dismiss or, in the Alternative, Transfer" ("Motion to Dismiss") (docket no. 19) and Plaintiff Louis J. Scorpiniti's "Motion to Strike Paragraphs 7 and 8 from the Declaration of Monica S. Wimber" ("Motion to Strike") (docket no. 27). In the Motion to Dismiss, FTVS asserts that the court does not have personal jurisdiction over it and, alternatively, asks the court to transfer venue to the Central District of California.

## II.  PROCEDURAL BACKGROUND

On June 16, 2011, Scorpiniti filed a Complaint (docket no. 1) alleging trademark infringement under 15 U.S.C. § 1117, false designation of origin and unfair competition under 15 U.S.C. § 1125 and unfair competition under Iowa common law.  On December 5, 2011, FTVS filed its first motion to dismiss (docket no. 11).

On December 20, 2011, Scorpiniti filed a motion to file a first amended complaint (docket no. 13), which the court granted on the same date.  *See* Order (docket no. 14). On December 21, 2011, Scorpiniti filed his First Amended Complaint (docket no. 15), listing the same three claims in the original Complaint.  On the same date, the court dismissed FTVS's first motion to dismiss as moot.  *See* Order (docket no. 16).

On January 17, 2012, FTVS filed the Motion to Dismiss.  On January 27, 2012, Scorpiniti filed a motion for leave to conduct jurisdictional discovery (docket no. 22), which the court denied in part on February 2, 2012.  *See* Order (docket no. 21).  On February 23, 2012, Scorpiniti filed a Resistance (docket no. 26) to the Motion to Dismiss. On the same date, he filed the Motion to Strike.  On March 5, 2012, FTVS filed a Reply (docket no. 30) to Scorpiniti's Resistance to the Motion to Dismiss.  On March 8, 2012,

FTVS filed a Resistance (docket no. 31) to the Motion to Strike.  On March 22, 2012, Scorpiniti filed a Reply (docket no. 32).  The matters are fully submitted and ready for decision.

### III.  SUBJECT MATTER JURISDICTION

The court has federal question subject matter jurisdiction over Scorpiniti's first two claims because they arise under the Lanham Act, 15 U.S.C. §§ 1117 and 1125(a).  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The court has supplemental jurisdiction over Scorpiniti's third claim because "the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (alteration in the original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349 (1988)) (internal quotation marks omitted).

### IV.  STANDARD OF REVIEW

"'To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004) (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)). "Although [the court] must view the evidence in the light most favorable to [the nonmoving party] and resolve all factual conflicts in its favor, as 'the party seeking to establish the court's in personam jurisdiction, [the nonmoving party] carries the burden of proof and the burden does not shift to the person challenging jurisdiction.'" *Id.* (quoting *Epps*, 327 F.3d at 647).  "While the plaintiff[] bear[s] the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Epps*, 327 F.3d at 647.

## V.  *RELEVANT FACTUAL BACKGROUND*

Viewed in the light most favorable to Scorpiniti, the facts are as follows:

### A.  *Parties*

Scorpiniti is a citizen of Iowa.  Scorpiniti produces and broadcasts religious-based programming, including television broadcasting services.

FTVS is a Delaware corporation with its principal place of business in Los Angeles, California.  FTVS is a television production company that creates and produces television shows.  FTVS is in the business of creating and producing television shows, but it is not in the business of broadcasting or advertising.  FTVS has no contractual relationships with local affiliate stations.  FTVS has: (1) never had an office or place of business in Iowa; (2) has never appointed an agent to act for it or to accept service of process in Iowa; (3) has never had any interest in, use of or possession of any real property in Iowa; (4) has never maintained a telephone number, mailing address or bank account in Iowa; (5) has never had any employees, representatives or agents in Iowa; and (6) has never registered as a foreign corporation doing business in Iowa.

### B.  *Alleged Trademark Infringement*

Scorpiniti owns and uses in commerce the mark "THE GATE," Registration No. 3,536,556, for "television broadcasting."  Beginning in 2007, Scorpiniti began working with others to develop a nationally televised music television program under the mark "THE GATE."  Scorpiniti has been using "THE GATE" in association with broadcasting his music television program on the Iowa Mediacom cable system program "Soul Search" in the Northern District of Iowa and throughout Iowa.  "THE GATE" is also prominently displayed on Scorpiniti's website, www.thegatetv.com.  The website contains a short pilot of Scorpiniti's music television program.

On January 21, 2010, FTVS applied for a trademark on "THE GATES" for "[e]ntertainment services in the nature of a television series featuring drama."  Plaintiff's Exhibit 2 (docket no. 1-3) at 2.  On March 3, 2010, the United States Patent and

Trademark Office ("USPTO") denied FTVS's trademark application due to the likelihood of confusion with several other trademarks, including Scorpiniti's. FTVS responded to the USPTO application denial by explaining that its mark was related to a television drama involving a particular gated community inhabited by unusual residents, including supernatural beings, and arguing that the religious nature of Scorpiniti's broadcast made the likelihood of confusion low. On September 22, 2010, after reviewing FTVS's request for reconsideration, the USPTO withdrew its refusal to register with respect to the likelihood of confusion between FTVS's proposed mark and Scorpiniti's mark.

On January 11, 2011, the USPTO filed a notice of publication of the mark "THE GATES," which instructed that "[a]ny party who believes it will be damaged by the registration of the mark may file a notice of opposition . . . with the Trademark Trial and Appeal Board." Notice of Publication, FTVS's Exhibit 3 (docket no. 11-7). Scorpiniti filed an opposition to "THE GATES," but he subsequently withdrew his opposition. *See* Withdrawal of Opposition, FTVS's Exhibit 4 (docket no. 11-8). On August 2, 2011, the USPTO issued a notice of allowance for FTVS's "THE GATES" mark. *See* Notice of Allowance, FTVS's Exhibit 5 (docket no. 11-9).

FTVS sold the "The Gates" television program to ABC. "The Gates" was televised nationally through ABC affiliates from approximately June 2010 through September 2010. Scorpiniti was approximately three months away from nationally launching his music television program, "The Gate," when FTVS announced the premier of its television program, "The Gates," through promotional spots on ABC. After "The Gates" aired, instances of actual confusion occurred in Iowa and Scorpiniti's sole investor withdrew funding for the final editing and distributing of Scorpiniti's program. A subsequent investor withdrew after learning about "The Gates." Nonparty witnesses who live in the Northern District of Iowa and were aware of Scorpiniti's trademark downloaded Scorpiniti's program from his website and knew of the broadcasting and promotion of "The Gates."

## VI.  MOTION TO STRIKE

In the Motion to Strike, Scorpiniti asks the court to strike paragraphs 7 and 8 from the Declaration of Monica S. Wimber (docket no. 19-3) as hearsay.  Instead of arguing that the paragraphs do not contain hearsay or suggesting an applicable hearsay exception, FTVS argues again in its Resistance to the Motion to Strike that jurisdiction is not proper and asks that the court deny the Motion to Strike and grant the Motion to Dismiss.  FTVS states that the declaration is the result of FTVS's independent research to determine whether Scorpiniti's "Soul Search" program containing Scorpiniti's "The Gate" mark was broadcast in the Northern District of Iowa.

Paragraphs 7 and 8 of the Declaration of Monica S. Wimber state the following:

> 7.     I then contacted a supervisor at Mediacom, Brian Piper who stated that "Soul Search" is broadcast on Des Moines Metro Area Mediacom Cable Channel 84 (Digital Channel 96.11), and further stated that there typically is not a listing of the scheduled shows for Public Access on Mediacom.  I, however, was unable to find this Public Access channel on the Mediacom cable station utilized by the firm.
> 8.     Finally, I contacted Mediacom for Cedar Rapids, and spoke with the programming producer, Jeff Anderson. He stated that they do not broadcast a show entitled "Soul Search" and according to his knowledge, never have.

Declaration of Monica S. Wimber at 2.

The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c). An affidavit in support of a motion "must be made on personal knowledge and contain admissible evidence."  *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972) (citing former Fed. R. Civ. P. 56(e)); *see also Jones v. Willow Gardens Care Ctr. et al.*, No. C98-0007 MJM, 2000 U.S. Dist. LEXIS 3559, at *20 (N.D. Iowa Jan. 28, 2000) ("A

motion to strike should be granted if affidavits contain inadmissible hearsay . . . ."); *cf.* *Garrett v. Church of the Nazarene*, No. 05-00204-CVWDW, 2005 WL 2219805, at *1-2 (W.D. Mo. Sept. 12, 2005) (citing Rule 56(e) in determining whether statements in an affidavit in support of a motion to dismiss for lack of personal jurisdiction should be stricken).

Paragraphs 7 and 8 of the Declaration of Monica S. Wimber contain inadmissible hearsay. The Mediacom employees that Wimber spoke with are out-of-court declarants, and the statements are offered to prove that the program "Soul Search" is not broadcast throughout Iowa. *See* Fed. R. Evid. 801(c). FTVS does not argue that any exception applies, and the court is not aware of any exception to the hearsay rule that would permit the court to consider paragraphs 7 and 8 in deciding the Motion to Dismiss. Thus, the court shall grant the Motion to Strike.

## VII.  MOTION TO DISMISS

In the Motion to Dismiss, FTVS argues that the court does not have personal jurisdiction over it because there are not sufficient minimum contacts to fulfill the requirements of due process. FTVS further argues that the District Court for the Northern District of Iowa is not the proper venue and, alternatively requests that the court transfer the case to the United States District Court for the Central District of California.

In response to FTVS's request for dismissal, Scorpiniti argues that the broadcast of thirteen episodes of "The Gates" in Iowa is sufficient to establish personal jurisdiction. Scorpiniti also argues that there is personal jurisdiction because the trademark infringement took place in Iowa.

### A.  Personal Jurisdiction

#### 1.     Parties' arguments

FTVS argues that the court does not have personal jurisdiction over it because: (1) Scorpiniti did not allege sufficient facts to prove general jurisdiction; and (2) there is no specific jurisdiction because Scorpiniti has not alleged that FTVS had sufficient

minimum contacts with Iowa.  Specifically, FTVS argues that "The Gates" was televised nationally by ABC and that it did not purposely direct its activities into Iowa and had no involvement in the national distribution of the television program.

In response, Scorpiniti argues that: (1) personal jurisdiction exists in states where an alleged trademark infringement takes place; and (2) personal jurisdiction can be based on broadcasting a television program into a forum state when the action arises from the broadcast itself and FTVS knew that the program would be broadcast nationally.

### 2.  *Applicable law*

"To determine whether a court has personal jurisdiction over a nonresident defendant, we ask two questions: (1) whether the applicable state long-arm statute . . . is satisfied; and (2) whether a court's exercise of jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment." *Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc.*, 63 F.3d 694, 696-97 (8th Cir. 1995).  Iowa's modern Rule providing long-arm authority over a nonresident defendant states:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306.  This long-arm rule extends Iowa's jurisdictional reach to the full extent allowable under the United States Constitution.  *See Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980); *see also Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 566 F. Supp. 2d 933, 937 n.3 (N.D. Iowa 2008).  Consequently, the court's sole inquiry becomes "whether exercise of personal jurisdiction comports with due process." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994); *see also McCabe v. Basham*, 450 F. Supp. 2d 916, 922 (N.D. Iowa 2006) ("Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process

Clause. Therefore, the court shall only examine whether the exercise of personal jurisdiction comports with due process." (internal citations omitted)).

"The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "'Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1090-91 (quoting *Bell Paper Box*, 22 F.3d at 818).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) ("The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."). General jurisdiction exists "if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances, the alleged injury need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). However, the plaintiff "must make a prima facie showing . . . that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Keeton*, 465 U.S. at 774). "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Eighth Circuit Court of Appeals has "instructed courts to consider the following factors when resolving a personal jurisdiction inquiry: '(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Id.* at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)); *see also Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (creating five-factor inquiry).

### 3. Analysis

Scorpiniti does not argue that there is general jurisdiction, and the record does not support a finding of continuous and systematic contacts necessary to support general jurisdiction. Thus, the court will examine the five relevant factors listed above to determine whether there is specific jurisdiction over FTVS.

#### a. Factors 1 and 2

The first two factors the court must examine are the nature and quality of FTVS's contacts with Iowa and the quantity of those contacts. As discussed above, FTVS has no contractual relationships with local affiliate stations. Further, FTVS has never had an office or place of business in Iowa, has never appointed an agent to act for it or to accept service of process in Iowa, has never had any interest in or use or possession of any real property in Iowa, has never maintained a telephone number, mailing address or bank account in Iowa, has never had any employees, representatives or agents in Iowa and has never registered as a foreign corporation doing business in Iowa. Thus, FTVS's contacts with Iowa consist of thirteen episodes of "The Gates" broadcast in Iowa through local ABC affiliates.

FTVS argues that, because it is a production company that is not involved in distribution or advertizing and does not have contracts with local affiliates, the broadcast of thirteen episodes of "The Gates" through ABC affiliates does not establish that FTVS purposefully directed its activities at Iowa. However, when FTVS sold "The Gates" to ABC, it was foreseeable that all of the episodes of the program would be broadcast nationally through ABC affiliates. Furthermore, FTVS cannot disassociate itself from the fact that it had prior knowledge of Scorpiniti's trademark in Iowa. Therefore, FTVS purposefully availed itself of the privileges of conducting activities in Iowa by placing its television program in the stream of commerce with the expectation that it would be distributed nationally, including in Iowa. *See Steinbuch*, 518 F.3d at 587-88 ("While mere placement of a product into the stream of commerce, without more, is insufficient to constitute purposeful availment, we have recognized a state's exercise of jurisdiction over a seller who delivered its products to a regional distributor with an expectation that the distributor would penetrate the forum state." (internal citation omitted)); *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) ("Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state."); *Tonka Corp. v. TMS Entm't, Inc.*, 638 F. Supp. 386, 390-91 (D. Minn. 1985) (holding that the court had personal jurisdiction over the defendant and finding purposeful availment because, when the defendant sold its television program to ABC for nationwide syndication, it "placed its program into the stream of commerce with the expectation that viewers in all states would watch it"); *Ger. Educ. Television Network, Ltd. v. Or. Pub. Broad. Co.*, 569 F. Supp. 1529, 1532 (S.D.N.Y. 1983) (holding that the court had personal jurisdiction over Oregon Public Broadcasting because it submitted a trademark-infringing program proposal to the PBS marketplace and it "both intended and foresaw that the [marketplace] would disseminate its proposals to significant public broadcasting outlets within New York state").

FTVS's reliance on the Supreme Court's decision in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) (plurality) is unavailing because the facts of this case are distinguishable. In *J. McIntyre Machinery, Ltd.*, the Supreme Court found that it did not have jurisdiction over the English manufacturer of a machine that injured a person in New Jersey. *Id.* at 2791. The manufacturer sold its machines to a United States distributer and attended conventions in the United States, but never in New Jersey, and no more than four of the manufacturer's machines ended up in New Jersey. *Id.* at 2786. In his plurality opinion, Justice Kennedy found that personal jurisdiction over the manufacturer did not exist because there was no evidence that the manufacturer had engaged in conduct directed at New Jersey. *Id.* at 2790. Justice Kennedy also stated that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 2788-89. Justice Breyer concurred in the judgment but disagreed with Justice Kennedy's narrow interpretation of the stream of commerce approach to jurisdictional issues. *Id.* at 2791-92 (Breyer, J. concurring). Justice Breyer found that there was no jurisdiction over the defendant because, under existing precedent, "a single sale of a product in a [s]tate does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *Id.* at 2792.

Unlike the circumstances in *J. McIntyre Machinery, Ltd.*, it was highly foreseeable that ABC would broadcast "The Gates" nationally, including in Iowa. Furthermore, it is well known that ABC has local affiliates across the nation, and it would be natural to expect that a program sold to ABC would be broadcast nationally and be viewed by a national audience, including individuals in Iowa. This is also not a circumstance where a single broadcast of a program occurred in Iowa—thirteen episodes of "The Gates" were shown in Iowa as a broadcast of a full season of a television series. *Cf. id.* at 2786; *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th

Cir. 2011) (holding that incidental contacts with the forum state, including scattered emails, phone calls and a wire transfer, did not constitute a deliberate and substantial connection with the forum state); *Stanton*, 340 F.3d at 694 (holding that there was no personal jurisdiction over a corporation that affixed a medical company's patented coating to fabric used in the manufacture of mechanical heart valves because the corporation's knowledge that it was possible for one piece of fabric to end up in the forum state was not sufficient to show purposeful availment). Accordingly, the court finds that the nature, quality and quantity of FTVS's contacts with Iowa support a finding of personal jurisdiction.

### b.    *Factor 3*

The third factor the court must consider is the relation of the cause of action to the contacts. FTVS argues that there is no evidence that Scorpiniti's program aired in the Northern District of Iowa, and, thus, there is no evidence of trademark infringement in relation to the broadcast of "The Gates." Scorpiniti argues that his program is available on his website and that individuals in the Northern District of Iowa have viewed his program online, and, thus, there is a likelihood of confusion in Iowa based on the overlap between the broadcast of "The Gates" and Scorpiniti's use of "The Gate."

In this case, there is a strong relationship between the contacts and the cause of action because the broadcast of "The Gates" in Iowa constitutes both the contacts with the forum state and the conduct underlying the cause of action. *See Tonka Corp.*, 638 F. Supp. at 390 ("The fact that a defendant's contacts with a forum state are the activities which give rise to a plaintiff's cause of action is an important consideration supporting a finding of personal jurisdiction."); *cf. Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1341 (8th Cir. 1983) (finding no personal jurisdiction and focusing on the fact that there was no connection between the cause of action and the defendant's sales activity in the forum state). Additionally, courts have held that there is personal jurisdiction in the state where trademark infringement took place. *See Tonka Corp.*, 638

13

F. Supp. at 390 ("*Land-O-Nod* itself indicates that personal jurisdiction exists in states where an alleged trademark infringement takes place." (citing *Land-O-Nod Co.*, 708 F.2d at 1343)); *see also Williams v. Vick Chem. Co.*, 279 F. Supp. 833, 836 (S.D. Iowa 1967) (stating that "the commission of one tort in whole or in part in Iowa is sufficient to give jurisdiction" under the Iowa statute and finding that the sale of a defective product in Iowa established sufficient minimum contacts for personal jurisdiction). FTVS had prior knowledge of Scorpiniti's trademark in Iowa and sold "The Gates" intending for it to be distributed nationally, including in Iowa, and "The Gates" subsequently aired in Iowa.

Contrary to FTVS's contention, the facts of this case are distinguishable from the facts that this court considered in *Dryspace, Inc. v. Crawlspace Concepts, L.L.C.*, No. 10-CV-100-LRR, 2011 WL 1113585 (N.D. Iowa Mar. 24, 2011). In *Dryspace*, the plaintiff based its infringement claim on the fact that the defendant named its product "Dryspace" despite having done a trademark search and the fact that defendant purchased the domain name www.dryspace.net the same day it received a cease and desist letter. *Id.* at *7. The court found that any trademark infringement was not uniquely or expressly aimed at Iowa, and there were not sufficient minimum contacts to establish personal jurisdiction. *Id.* This case is unlike *Dryspace*, where no sales of the infringing product occurred in Iowa and the existence of the website was the sole contact with Iowa. Here, the allegedly infringing program was broadcast in Iowa thirteen times. Because the contacts with Iowa—the broadcast of "The Gates" in Iowa—also constitute the alleged infringing conduct, there is a strong relationship between the contacts and the cause of action. Accordingly, the court finds that the relationship between the contacts and the cause of action supports a finding of personal jurisdiction.

        *c.*     **Factor 4**

The fourth factor the court must consider is the interest of the forum state in providing a forum for its citizens. *See Dever*, 380 F.3d at 1073-74 (noting factors). FTVS acknowledges that a state has an interest in providing a forum for its citizens.

Scorpiniti is a citizen of Iowa, and, therefore, the fourth factor supports a finding of personal jurisdiction over FTVS.

### d.    Factor 5

The fifth factor the court must consider is the convenience of the parties.  FTVS argues that it would be inconvenient and burdensome to require FTVS and its witnesses to travel to Iowa to adjudicate what it claims are "baseless allegations."  Memorandum of Law in Support of Defendant's Motion to Dismiss (docket no. 19-1) at 14.  Scorpiniti disputes such argument and maintains his allegations are not baseless.

Scorpiniti avers that, as a result of the broadcast of "The Gates" in Iowa, instances of actual confusion occurred in Iowa and Scorpiniti's sole investor withdrew the funds for the "The Gate" program.  Scorpiniti's attorney, Timothy Zarley, averred that Scorpiniti could not market his program because of the presence of "The Gates" in the market. Without deciding the merits of Scorpiniti's claim, the court finds that Scorpiniti's allegations are not baseless.  *Cf. Coen v. Coen*, 509 F.3d 900, 906 (8th Cir. 2007) (finding that it would be "substantially inconvenient and extremely burdensome" to require multiple overseas defendants and their witnesses to travel to Minnesota and finding that there was no factual basis for the plaintiff's allegations of an intentional tort).  Furthermore, it would also be costly and inconvenient for Scorpiniti to litigate this action in another state.  Thus, to the extent Iowa is an inconvenient forum for FTVS, that inconvenience is not sufficient to outweigh the above factors that weigh in favor of personal jurisdiction.

### 4.    Summary

Having weighed each of the above factors, the court finds that Scorpiniti has made a prima facie showing that the court may exercise personal jurisdiction over FTVS. Therefore, the court shall deny FTVS's Motion to Dismiss to the extent it seeks relief on these grounds.

### B.  Venue

#### 1.    Parties' arguments

In the alternative, FTVS asks the court to transfer this case to the Central District of California.  In support of this request, FTVS argues that Scorpiniti's choice of venue should not control because Scorpiniti is not bringing the action in his home venue.  FTVS further argues that transfer is appropriate because: (1) FTVS, its witnesses and its documentary evidence are in California; (2) the locus of operative facts favors transfer; and (3) it will be costly for FTVS to litigate the action in Iowa.

Scorpiniti argues that: (1) transfer is not appropriate if it "merely transforms an inconvenience for one party into an inconvenience for another party," Resistance at 8; (2) his nonparty witnesses reside in this district; (3) the material events occurred in Iowa; and (4) his limited financial means would preclude him from litigating the case in California.

#### 2.    Applicable law

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1]  28 U.S.C. § 1404(a).  "The statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice."  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

However, a court's evaluation of a transfer motion is not limited to these enumerated factors.  *Id.*  "[S]uch determinations require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Id.* Generally, "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under [§] 1404(a) typically bears the burden of proving

---

[1] The parties do not dispute that the Central District of California is a district where the instant action "might have been brought."  28 U.S.C. § 1404(a).

that a transfer is warranted." *Id.* at 695.   District courts possess "much discretion" in deciding whether to transfer a case. *Id.* at 697.

      **3.**    *Analysis*

          **a.**      *Convenience of the parties*

      At the outset, FTVS argues that Scorpiniti's choice of venue should be given less deference because the Northern District of Iowa is not Scorpiniti's home venue.  Scorpiniti lives in Des Moines, Iowa, which is located in the Southern District of Iowa.  Scorpiniti argues that he chose the Northern District of Iowa because his nonparty witnesses live in the Northern District of Iowa and the allegedly trademark infringing program was broadcast throughout Iowa and is available on his website in the Northern District of Iowa.

      FTVS relies on *Sinochem Internation Co. v. Malaysia Internationl Shipping Corp.*, 549 U.S. 422 (2007), which stated that, "[w]hen the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id.* at 430 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).  Both *Sinochem* and *Piper* involved situations where a plaintiff from a foreign country brought an action in a district court in the United States. *See id.*; *Piper Aircraft Co.*, 454 U.S. at 255-56 (stating that a foreign plaintiff's choice deserves less deference because the assumption that the trial is convenient for that plaintiff is less reasonable).  In this action, although Scorpiniti did not file this action in his home district, he did file the action in his home state.  Furthermore, Scorpiniti states that he chose to file the action in the Northern District of Iowa because it would be convenient for his nonparty witnesses who live in the district.  The instant action does not involve a situation where a foreign plaintiff decides to commence an action in a United States district court, and several facts, which include that Scorpiniti's chosen forum is in his home state, he chose the forum for the convenience of his nonparty witnesses and the alleged harm occurred in this district, support the presumption that the forum is convenient. *Cf. In re Apple, Inc.*, 602 F.3d 909, 913 (8th

Cir. 2010) (holding that a Taiwanese corporation's choice of an Arkansas district court was not entitled to deference because the plaintiff was foreign and there was no connection between the parties, defendants or the dispute and Arkansas). Therefore, the court finds that Scorpiniti is entitled to the presumption that his chosen forum is convenient.

Furthermore, although the Northern District of Iowa is less convenient for FTVS than the Central District of California, transferring the case to the Central District of California would merely shift the inconvenience from FTVS to Scorpiniti. *See Terra Int'l*, 119 F.3d at 696-97 ("Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue."). Because Scorpiniti's choice of forum is entitled to the presumption of convenience and FTVS has not demonstrated that transferring the case would do anything but shift the inconvenience from one party to another, this factor weighs against transfer of venue.

### b.   *Convenience of the witnesses*

FTVS argues that the convenience of the witnesses weighs in favor of transfer because all of its key witnesses and its headquarters are located in the Central District of California. FTVS further argues that the majority of documentary evidence in this case is located in California. Scorpiniti argues that his nonparty witnesses are essential to establishing the likelihood of confusion element of his trademark action, and his nonparty witnesses are beyond the subpoena power of the Central District of California.

In considering the convenience of the witnesses, "the district court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991). "The burden is on the defendant to provide these facts by way of affidavit or other information." *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 258); *see also* 15 Charles Alan Wright et al., Federal Practice and Procedure § 3851 (3d ed.) ("The party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will

cover."). "The focus on [the convenience of witnesses] point is a qualitative, not a quantitative one and clearly is dependant on the factual and legal context of the particular case." 15 Wright et al. *supra*, § 3851.

> If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the application for transferring the case should be denied . . . .

*Id.*

FTVS's Vice President of Production, Robert Lemchen, avers that FTVS's key witnesses reside in California and will testify regarding its general business, its choice of "THE GATES" trademark, its federal trademark application, its television program, the target market and the markets in which "The Gates" aired. Zarley avers that the majority of Scorpiniti's nonparty witnesses reside in Iowa and will testify about their association of the "THE GATE" mark with Scorpiniti, their observation of FTVS's saturation of the market with the "The Gates" program, investors who withdrew funding from Scorpiniti's program and residents who were confused by FTVS's use of "The Gates." Zarley also avers that the majority of the Iowa witnesses are beyond the subpoena power of the Central District of California. Additionally, Scorpiniti has provided affidavits from individuals living in the Northern District of Iowa who plan to testify regarding their familiarity with Scorpiniti's trademark and access to the trademarked program in the Northern District of Iowa.

FTVS's affidavit does not provide sufficient specific information for the court to determine who FTVS's witnesses are and how important their testimony will be. *Cf. Maritz Inc. v. C/Base, Inc.*, No. 406-CV-761 CAS, 2007 WL 433378, at *10 (E.D. Mo. Feb. 6, 2007) ("The [c]ourt does not have facts before it from which it can balance the convenience of the witnesses because it does not know who the witnesses are, where they reside, what their expected testimony is, or how many witnesses there are. As a result,

the [c]ourt finds that [the defendant] has failed to show that the convenience of the witnesses factor favors transfer of the case."). Furthermore, Scorpiniti has provided affidavits from witnesses who live in the Northern District of Iowa and whose testimony is material to the case. Based on the facts presented, the court finds that the convenience of the witnesses factor does not weigh heavily in favor of one party over another and, therefore, FTVS has failed to show that the convenience of its witnesses outweighs the convenience of Scorpiniti's witnesses. Additionally, the fact that FTVS's documentary evidence is located in California does not tip the balance of convenience in favor of FTVS. *See* 15 Wright et al., *supra*, § 3853 (3d ed.) Standard in Considering Books and Records ("[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form, . . . their location is entitled to little weight."). Thus, the convenience of witnesses factor weighs against transfer of venue.

### c.    *Interests of justice*

FTVS argues that transfer is in the interests of justice because the connection between the alleged harm and Iowa is remote and FTVS will incur significant expense litigating the action in Iowa. Scorpiniti argues that he is "an individual with limited financial resources" and that "[a] transfer of this case to California would work such a financial hardship on [him] that he would have to forego his right to prosecute the action." Resistance to Motion to Dismiss at 11.

As discussed above, the cause of action is related to FTVS's contacts with Iowa. The alleged harm occurred in Iowa, and, thus, FTVS's argument that there is no connection between Iowa and the alleged harm is unfounded. Additionally, the court accords significant weight to Scorpiniti's choice of forum. Furthermore, although FTVS could incur substantial costs litigating this case in Iowa, Scorpiniti would suffer a greater financial hardship if forced to litigate the case in California; the individual costs outweigh the corporate costs at issue here. *Cf. Jacques v. Dakota, Minn. & E. R.R. Corp.*, 2008 WL 835651, at *3 (D. Minn. Mar. 27, 2008) (finding that a corporate defendant was

better positioned to bear the costs of litigation in a distant forum than an individual plaintiff). Thus, the interests of justice factor weighs against transfer of venue.

### 4.    *Summary*

Having weighed each of the above factors, the court finds that transfer of venue to the Central District of California is not warranted. Therefore, the court shall deny FTVS's alternative request to transfer venue.

### VIII.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Defendant FTVS's Motion to Dismiss (docket no. 19) is **DENIED**; and

(2) Plaintiff Scorpiniti's Motion to Strike (docket no. 27) is **GRANTED**.

**DATED** this 31st day of August, 2012.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA